## O. L. SHAFTER ESTATE CO. v. MOONEY.

Circuit Court of Appeals, Ninth Circuit.
April 18, 1927.

No. 5019.

Bankruptcy ⬤⟲165(2)—Payment by a third party of back rent owing by bankrupt to defendant held not recoverable as voidable preference.

Defendant owned a number of ranches, which it rented by annual leases for dairying purposes, furnishing dairy stock to the tenants. It was its custom on expiration of a lease to renew, if the tenant was satisfactory, or to permit him to sell to another who was satisfactory, including the so-called good will or privilege of renewing the lease. Bankrupt was a tenant, and on expiration of his lease desired to sell, but was in default for rent, and defendant refused to renew to the purchaser unless the arrearage was paid. By agreement between bankrupt, who was insolvent, and the purchaser, the latter paid the back rent and paid for bankrupt's equipment to a trustee for his creditors. *Held,* that defendant had the right to exact such payment as a condition to renewal of the lease, and that it was not recoverable by bankrupt's trustee as avoidable preference.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; William H. Sawtelle, Judge.

Action at law by W. T. Mooney, trustee in bankruptcy of William Bartholomew, against the O. L. Shafter Estate Company. Judgment for plaintiff, and defendant brings error. Reversed.

Edgar T. Zook and Charles W. Slack, both of San Francisco, Cal., for plaintiff in error.

Reuben G. Hunt, of San Francisco, Cal., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The defendant in error (hereinafter referred to as the plaintiff) brought this suit in his capacity as trustee in bankruptcy of the estate of William Bartholomew to recover from the plaintiff in error (hereinafter called the defendant) the sum of $1,764.25, upon the theory that the payment thereof to defendant constituted a voidable preference under sections 60a and 60b of the Bankruptcy Act (Comp. St. § 9644). Jury was duly waived, and after hearing the evidence the court gave plaintiff judgment for the full amount claimed.

The real controversy is over the construction and legal effect to be given to a set of facts in respect to which the testimony is without substantial conflict. The defendant corporation is the owner of a large tract of land in Marin county, Cal., which it has subdivided, and leases mainly for dairying purposes. With each ranch it also furnished dairy stock for the use of the lessee, upon terms covered by the lease. Its leases run for the term of one year; but, unless the tenant turns out to be unsatisfactory, renewals are made from year to year as a matter of course. And in the case of a satisfactory tenant, who for any reason desires to withdraw, it has been the custom of the defendant to accept as his successor another to whom he desires to sell his dairy equipment, together with the so-called "good will" or privilege of renewing the lease.

Bartholomew was a tenant on one of these ranches; his last lease being for the year ending on September 30, 1925. In the spring of 1925, 23 of the heifers turned over to him by the defendant disappeared, and because of his failure to give any satisfactory explanation, and further because of his defaults in respect to installments of rent and in keeping the property in repair, the defendant's manager, in the latter part of June, 1925, informed him that he could not go on, and that he must find another tenant and sell out. With his earlier efforts to sell we are not concerned, but in September, when his lease was about to expire, we find him negotiating with one Hall, upon a basis of $6,500. He was then indebted to divers persons in the aggregate amount of $11,000, and was hopelessly insolvent. In addition to $1,400 overdue on account of the lease, defendant claimed in excess of $300 as damages for his failure to keep the leased premises in repair. To protect the creditors, defendant's superintendent suggested to Hall that, if he dealt with Bartholomew, the money should not be paid to him directly, but should be turned over to his creditors. After some delay Hall informed Bartholomew he would not pay $6,500, and the negotiations ended. Subsequently they were resumed, upon a proposition from Hall that he would pay altogether $4,500, but no more, in consideration for Bartholomew's outfit, and for a lease with a rental charge of $2,200 per year, instead of $2,500. Defendant advised Hall that, while otherwise he would be satisfactory, it would not accept him as a tenant until and unless the amounts it claimed from Bartholomew were paid. Finally, upon the day after Bartholomew's lease expired, he consented that Hall pay to a trustee, for the use of his creditors, approximately $2,800, and he in turn delivered to Hall his dairy supplies and equipment, and upon the payment to defendant by Hall of $1,764.25, the amount now in controversy, he was given a lease of the premises, reciting the $1,764.25 as a consideration.

Undoubtedly we should not be bound by this recital, if, whatever may have been its form, the transaction in essence constituted a preferential payment. It is also probably true that, if Bartholomew had not been indebted to defendant, the latter would have consented, not only to the sale for $4,500, but to the payment of the full amount thereof to Bartholomew, or his creditors, and would have given Hall a lease. But these considerations are not necessarily controlling. Defendant was under no obligation, legal or moral, to execute a new lease, either to Bartholomew or to his appointee. His lease had expired, and for substantial reasons defendant had found him to be an unsatisfactory tenant. Clearly it was master of the situation. It had the power and the legal right to say to Hall that it would not give him a lease unless he would make good Bartholomew's defaults, and Hall might in turn say to Bartholomew he would pay him for his equipment $2,800, and no more.

From one viewpoint it may seem unreasonable that Hall would pay to defendant $1,700 as a consideration for the lease, in addition to the stipulated rental charge; but that is no more unreasonable than to assume he would pay that amount to Bartholomew for his so-called good will. The consideration for the $1,700 was precisely the same in both alternatives, and it was just as valuable if we assume it came from the defendant as it would be if we assume it came from Bartholomew. And the good will or privilege of entering into the lease was the only possible consideration, for there is no serious contention that the $2,800 paid to Bartholomew, or to his creditors for his use, was less than the value of the personal property he sold to Hall. Plaintiff did not offer to prove that it was worth more, and, to the contrary, successfully objected to defendant's attempt to show that Hall offered to turn all he got from Bartholomew over to his creditors for $2,000, and thus take a loss of $800. That being true, how can the plaintiff now contend that all of the $4,500 was in fact paid for Bartholomew's outfit?

The truth is that, in accepting Hall as lessee and requiring him to buy the equipment from Bartholomew, defendant assisted Bartholomew in getting more for what he owned than would otherwise have been possible. True, it might have permitted him also to capitalize the so-called good will; but that would have been a matter of grace, and not of right. Even if we assume that, in exacting $1,700 from Hall as a condition to giving him a lease, defendant acted harshly toward Hall, Bartholomew's creditors are not in position to complain, in the absence of proof that some part of that sum was for property owned by Bartholomew, or was in consideration for a right vested in him. To constitute a preference, the payment in question must have been out of funds belonging to the bankrupt, and have operated to diminish his estate.

The judgment is reversed, with directions to take further proceedings not out of harmony herewith.